**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF NORTH CAROLINA**

GILBERT BRYAN                               )
Plaintiff                                   )
                                            )
                                            )
V                                           )          Case No. :25-cv-00578-M-BM
                                            )
                                            )     PLAINTIFF'S REPLY IN "OPPOSITION TO
                                            )     DEFENDANT EQUIFAX'S OPPOSITION TO
Equifax Information Services, LLC           )          PLAINTIFF'S MOTION TO DENY
Defendant                                   )       DEFENDANT'S MOTION TO DISMISS"
                                            )

**INTRODUCTION**

Defendant Equifax's Opposition (Doc. 16) rests on a fundamentally flawed premise: that Plaintiff

has attempted to fraudulently invoke federal bankruptcy court authority. This argument is

demonstrably false. Plaintiff never represented that he filed a bankruptcy case in the U.S.

Bankruptcy Court for the Eastern District of North Carolina. Rather, Plaintiff's legal theory rests

on creditor-initiated debt cancellations, documented by IRS Form 1099-C for each account, and

supported by sworn Certificates of Discharge and multiple formal notices to Equifax, to which

Equifax has failed to respond.

Equifax's Opposition ignores the undisputed factual record and the burden-shifting framework

established by Federal Rule of Evidence 301. Plaintiff's sworn documents, combined with proof

of written notice to Equifax and Equifax's documented silence, create a presumption of debt

1

cancellation and Equifax's bad faith. Equifax has submitted no competent evidence to rebut this presumption—only unsupported accusations.

## I. EQUIFAX'S "FRAUD ON THE COURT" ARGUMENT RESTS ON A FALSE PREMISE

### A. Plaintiff Never Filed a Bankruptcy Case and Does Not Rely on One

Equifax's central claim is that Plaintiff's "Official Substitute Form 101 Certificate of Discharge in Bankruptcy" documents are fraudulent because "the docket records of the U.S. Bankruptcy Court for the Eastern District of North Carolina reflect no bankruptcy proceedings filed by Plaintiff." (Doc. 16, p. 2.)

This argument is built on a false foundation. Plaintiff does not assert that he filed a bankruptcy case in federal court. The Certificates of Discharge attached to Plaintiff's Complaint are *personal sworn declarations*, executed under penalty of perjury by Plaintiff, not forged court orders. They state that Plaintiff has "granted a discharge of consumer debt" as to the specific accounts listed—based on the creditors' own cancellations as evidenced by Form 1099-C.

The legal theory is straightforward: When a creditor issues a Form 1099-C ("Cancellation of Debt"), it signifies that the debt has been cancelled, forgiven, or discharged by the creditor. *See* 26 U.S.C. § 61(a)(12) (Form 1099-C reporting requirements); IRS Form 1099-C Instructions (defining identifiable event codes). Plaintiff has provided Form 1099-C copies for each disputed account, showing discharge dates ranging from March 13, 2018 to October 26, 2021. These are IRS documents, not documents Plaintiff fabricated.

2

## B. Disputed Documents Are Not Inherently "Fraudulent" Simply Because They Are Not in a Federal Docket

At the motion-to-dismiss stage, a plaintiff's allegations in a complaint—supported by attached exhibits and sworn affidavits—must be accepted as true unless they are patently implausible or contradicted by judicial notice of an undisputed public record. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Twombly*, 550 U.S. 544 (2007).

Equifax's argument amounts to: "Because we cannot find a bankruptcy case in PACER, Plaintiff must be lying." This fails on two grounds:

**First,** Plaintiff is not claiming there is a case in PACER. Plaintiff is claiming the debts were cancelled by the creditors (evidenced by 1099-C forms), not discharged by a bankruptcy court.

**Second**, even if one were to accept arguendo that Plaintiff's theory of "Certificate of Discharge" is legally novel or inventive, that does not make it "fraud on the court." *Great Coastal Express, Inc. v. Int'l Bhd. of Teamsters*, 675 F.2d 1349, 1357 (4th Cir. 1982), which Equifax cites, holds that perjury or fabricated evidence are "not grounds for relief as 'fraud on the court'" because "[p]erjury and fabricated evidence are evils that can and should be exposed at trial." Equifax's remedy is to challenge Plaintiff's legal theory at summary judgment or trial, not to dismiss based on a fraud allegation unsupported by evidence.

## C. Equifax's Fraud Argument Ignores the Chronology of Written Notice and Non-Response

Critically, Equifax's Opposition does not address Plaintiff's repeated, documented written notices to Equifax prior to litigation:

3

1. **May 12, 2025 – Notarized Letter to Equifax**: Plaintiff sent a notarized letter (attached hereto as Exhibit A) to Equifax at its official Atlanta address, providing:

   - Identification information (SSN and date of birth)

   - The six disputed account numbers

   - Copies of Form 1099-C for each account

   - Copies of notarized "Certificates of Discharge"

   - Explicit citation to 11 U.S.C. §§ 524(a)(2) and 525(a)

   - Demand for deletion of the accounts within the statutory timeframe

2. **June 11, 2025 – CFPB Complaint #250611-21466385**: Plaintiff filed a complaint via the Consumer Financial Protection Bureau (attached hereto as Exhibit B), specifically requesting:

   - Method of Verification for each disputed account

   - Reinvestigation of the accounts in light of the 1099-C forms

   - Copies of Equifax's authorization to discuss his accounts without his consent

   Equifax received this complaint and responded on July 12, 2025, stating only that it had "verified" that the accounts "belong to" Plaintiff, without providing the requested method of verification.

3. **July 17, 2025 – Formal Notice of Claim**: Plaintiff sent a formal Notice of Claim to Equifax's Consumer Relations department (attached hereto as Exhibit C) via certified mail with proof of delivery, demanding:

4

- Permanent deletion of erroneous and fraudulent accounts within 10 days

- Written confirmation of corrections within 10 days

- Alternatively, suit for damages, punitive damages, and attorney's fees

**Equifax never responded to this Notice of Claim.**

**D. Equifax's Silence in Response to the Method-of-Verification Request Demonstrates Bad Faith**

Equifax's Opposition is entirely silent on Plaintiff's CFPB complaint (#250611-21466385) requesting the "method of verification" for each disputed account under 15 U.S.C. § 1681i(a). This is not accidental; Equifax cannot explain it away.

When Equifax responded to the CFPB on July 12, 2025, it stated that it had "verified" the accounts with the furnishers. But it provided no method of verification. Under the FCRA, once a consumer submits a dispute and Equifax claims to have investigated it, the consumer has the right to obtain the method of verification—i.e., the basis on which Equifax determined the accounts were legitimate.

Equifax's failure to provide this information, combined with its blanket statement that the accounts "belong to" Plaintiff (despite Plaintiff's submission of 1099-C forms showing they were cancelled), suggests that Equifax either:

- Never actually conducted a reasonable investigation, or

- Did investigate but discovered the accounts were indeed cancelled and chose to ignore that finding

Either scenario would constitute willful noncompliance with 15 U.S.C. § 1681i.

5

## II. EQUIFAX'S SECTION 2 ACCUSATIONS ARE UNSUPPORTED AND INCONSISTENT WITH THE RECORD

### A. Equifax's Claim That Plaintiff's FCRA Allegations Are "Inconsistent" Lacks Evidentiary Foundation

Equifax argues (Doc. 16, p. 2) that Plaintiff's "contention that at least some of the accounts purportedly discharged in bankruptcy were also fraudulent" is inconsistent with claiming the debts were discharged in bankruptcy.

This argument has no basis in law or fact. An account can be both:

- **Fraudulent** (opened or used without the consumer's authorization, indicating identity theft), *and*

- **Cancelled** (discharged by the creditor, as evidenced by Form 1099-C)

In fact, when a creditor cancels a debt due to suspected fraud or identity theft, it often issues a 1099-C. There is no legal prohibition against a consumer claiming both that (1) accounts were fraudulently opened in his name and (2) the creditors have since cancelled those accounts. Indeed, this scenario is entirely consistent with modern identity theft patterns.

Equifax has provided no case law, statute, or regulation supporting the proposition that these theories are mutually exclusive. The accusation is therefore mere speculation, not a ground for dismissal.

6

**B. Equifax Cannot Dispute a CFPB-Submitted Complaint as an Invalid "Dispute"**

Equifax argues (Doc. 16, p. 2-3) that Plaintiff's dispute does not qualify as a proper dispute under 15 U.S.C. § 1681i(a)(1)(A) because it was submitted via the CFPB rather than directly to Equifax, and that *Waller v. Experian Info. Sols., Inc.*, 2024 WL 3555344 (D. Md. Jul. 24, 2024), forecloses CFPB disputes.

This argument is contradicted by Equifax's own conduct. Equifax *received* the CFPB complaint (#250611-21466385), *reviewed* it, and *provided a response* on July 12, 2025. By doing so, Equifax accepted the complaint as a valid triggering event requiring investigation under the FCRA. Equifax cannot now argue the complaint was invalid when it has already processed and responded to it.

Moreover, the CFPB complaint was merely a formal vehicle for reiterating disputes that had already been submitted directly to Equifax in writing on May 12, 2025. The May 12 letter was sent directly to Equifax at its official address with copies of the 1099-C forms and Certificates of Discharge. That submission cannot be dismissed as indirect.

**C. Equifax's Identity Theft Report Argument Is Premature and Factually Baseless**

Equifax argues (Doc. 16, p. 3) that Plaintiff's "identity theft report" is invalid because the signature appears to be by "Gil Bryan Estate" rather than "Plaintiff, as an individual consumer." Plaintiff's Complaint and attached exhibits do not reference an "identity theft report" signed by an "Estate." This appears to be a mischaracterization by Equifax of Plaintiff's notarized Certificates of Discharge. Plaintiff's Affidavit of Identity, which was included in the Complaint, is clearly signed by Plaintiff individually, not by any estate.

7

At the motion-to-dismiss stage, Equifax's speculation about signature lines and entity designations cannot override Plaintiff's sworn statements and exhibits. This argument is premature and factually unsupported.

### III. FEDERAL RULE OF EVIDENCE 301 SHIFTS THE BURDEN TO EQUIFAX

#### A. Rule 301 Creates a Presumption From Foundation Facts

Federal Rule of Evidence 301 provides:

> "Unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally."

Where a party establishes foundation facts, a rebuttable presumption arises in favor of that party's position. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (discussing burden-shifting under Rule 301).

#### B. Plaintiff Has Established Foundation Facts Creating Presumptions

Plaintiff has established the following foundation facts:

1. **Sworn, Notarized Documents**: Plaintiff submitted notarized Certificates of Discharge under penalty of perjury, executed by a North Carolina notary, identifying each disputed account and the discharge date.

2. **IRS Form 1099-C**: Plaintiff submitted official IRS Form 1099-C documents for each account, showing:

8

- Discover Bank (Acct. ending 3979): Debt discharged $9,908.00 (Date: 3/13/2018)

- US Bank (Acct. ending 7254): Debt discharged $16,587.00 (Date: 8/4/2020)

- Apple Card/GS Bank (Acct. ending 4403): Debt discharged $7,455.00 (Date: 4/25/2022)

- USAA Federal Savings Bank (Acct. ending 0710): Debt discharged $5,865.00 (Date: 8/23/2021)

- USAA Federal Savings Bank (Acct. ending 1916): Debt discharged $5,460.00 (Date: 10/26/2021)

- JP Morgan Chase (Acct. ending 5485): Debt discharged $19,847.00 (Date: 7/21/2021)

These are government-issued tax documents with creditor TINs, debtor TINs, and account numbers. They are not fabricated.

3. **Written Notice to Equifax**: Plaintiff sent a notarized letter to Equifax on May 12, 2025, providing identification, account numbers, 1099-C forms, and explicit demand for correction under the FCRA and Bankruptcy Code.

4. **CFPB Complaint with Documented Response**: Plaintiff filed CFPB Complaint #250611-21466385 on June 11, 2025, requesting method of verification. Equifax received and responded to this complaint on July 12, 2025—confirming receipt and acknowledgment of the dispute.

5. **Formal Notice of Claim with Proof of Delivery**: Plaintiff sent a formal Notice of Claim via certified mail on July 17, 2025, with proof of delivery to Equifax's Consumer Relations department, demanding deletion within 10 days or legal action.

9

## C. Presumptions Arising From These Foundation Facts

From the above foundation facts, the following presumptions arise:

1. **Presumption that debts were cancelled**: The IRS Form 1099-C documents, issued by the creditors themselves and bearing official creditor and debtor TINs, create a presumption that the debts listed were cancelled, forgiven, or discharged by the creditor. 26 U.S.C. § 61(a)(12).

2. **Presumption that Equifax received notice**: The May 12, 2025 letter was sent via USPS to Equifax's known official address. The CFPB complaint was formally submitted on June 11, 2025, to the CFPB and forwarded to Equifax on the same date. The Notice of Claim was sent via certified mail with signature confirmation. These methods create a presumption of receipt and notice.

3. **Presumption of duty to investigate**: Upon receipt of a written dispute with attached documentary evidence, Equifax has a statutory duty to reasonably investigate the claim under 15 U.S.C. § 1681i(a). The presumption is that Equifax received notice of the dispute and triggered a duty to investigate.

4. **Presumption against credibility of Equifax's "verification" claims**: Equifax's July 12, 2025 response to the CFPB stated that it had "verified" that the accounts "belong to" Plaintiff, yet Equifax provided no method of verification and ignored the 1099-C forms and Certificates of Discharge provided by Plaintiff. The presumption is that Equifax's "verification" was cursory or nonexistent, and that Equifax acted in bad faith by failing to provide the requested method of verification.

10

## D. Equifax Has Not Rebutted These Presumptions

Equifax's Opposition provides no evidence that:

- The IRS 1099-C forms are fraudulent or invalid

- Equifax did not receive the May 12, 2025 letter (no affidavit denying receipt)

- Equifax did not receive the CFPB complaint (contradicted by Equifax's own July 12 response)

- Equifax did not receive the Notice of Claim (contradicted by the certified mail receipt)

- Equifax conducted a reasonable investigation of the 1099-C and Certificates of Discharge

- Equifax has any legitimate basis for continuing to report these accounts as valid

Instead, Equifax offers only legal arguments ("fraud on the court") and unsupported accusations ("inconsistent claims"). These are not evidence. Under Rule 301, Equifax bears the burden of producing evidence to rebut the presumptions, and it has failed to do so.

## IV. PLAINTIFF'S CLAIMS STATE A PLAUSIBLE CAUSE OF ACTION

### A. FCRA § 1681i Claim – Failure to Reinvestigate

Plaintiff has alleged that:

1. He submitted written disputes to Equifax (May 12, 2025 letter; June 11, 2025 CFPB complaint)

2. He provided documentary evidence of debt cancellation (IRS 1099-C forms)

3. Equifax received these disputes and evidence

11

4. Equifax failed to provide the method of verification requested in the June 11, 2025 complaint

5. Equifax continued to report the accounts as valid after this dispute

This states a plausible claim under 15 U.S.C. § 1681i, which requires credit bureaus to "conduct an investigation with respect to disputed information" and "furnish a written notice to the consumer of the results of the investigation." *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009).

## B. FCRA § 1681c-2 Claim – Identity Theft Blocking

Plaintiff has submitted evidence of identity theft (FTC Identity Theft Report, detailed in the July 17, 2025 Notice of Claim). Under § 1681c-2, once a consumer submits a valid identity theft report, the credit bureau must block the fraudulent accounts within four business days. Equifax's failure to do so within the required timeframe is a statutory violation.

## C. Bankruptcy Code § 525(a) Claim – Non-Discrimination

11 U.S.C. § 525(a) prohibits adverse action against a consumer based on discharge of debt. Equifax's continued reporting of discharged accounts as valid, after receiving notice of the 1099-C forms and Certificates of Discharge, constitutes an implicit assertion that the debts remain valid and collectible—contrary to § 525(a).

## D. Bankruptcy Code § 524(a)(2) Claim – Prohibition on Collection

11 U.S.C. § 524(a)(2) provides: "A debtor that is an individual shall be granted a discharge of all debts that arise before the date of the order for relief under this chapter." Where a creditor has

12

issued a 1099-C, it has acknowledged that the debt is no longer collectible. Equifax's continued reporting of such accounts creates an implicit assertion that the debt may be collected—violating § 524(a)(2).

## V. DISCOVERY IS NECESSARY AND APPROPRIATE

Should the Court find any factual or legal deficiency in Plaintiff's pleadings, Plaintiff respectfully requests that the Court permit limited discovery before ruling on the motion to dismiss. Specifically, Plaintiff seeks discovery regarding:

1. Equifax's receipt and processing of the May 12, 2025 notarized letter
2. Equifax's receipt and response to CFPB Complaint #250611-21466385
3. Equifax's receipt of the July 17, 2025 Notice of Claim
4. Equifax's investigation methodology and any notes or communications related to the investigation of the six disputed accounts
5. Equifax's method of verification for each account, including furnisher communications
6. Any evidence Equifax relied upon in determining that the accounts "belong to" Plaintiff, despite the 1099-C forms indicating cancellation

This discovery is directly relevant to whether Equifax complied with § 1681i's duty to reasonably investigate, and to the reasonableness of Equifax's "verification" claims.

## VI. CONCLUSION

Equifax's Opposition rests on the false premise that Plaintiff has forged bankruptcy court documents. Plaintiff has done no such thing. Instead, Plaintiff has submitted:

- Notarized, sworn Certificates of Discharge

13

- IRS Form 1099-C documents from the creditors themselves

- Documented written notice to Equifax on three separate occasions

- Proof of Equifax's receipt and processing of these notices

Equifax's sole response has been to claim "fraud on the court" without evidence, and to make factually baseless accusations about alleged "inconsistencies." These tactics do not rebut the presumptions created by Plaintiff's foundation facts under Fed. R. Evid. 301.

Equifax has failed to demonstrate that Plaintiff's claims are implausible or that Plaintiff cannot prove a set of facts in support of his claims. To the contrary, the undisputed record of written notices, 1099-C forms, and Equifax's documented silence demonstrates a plausible claim of FCRA and Bankruptcy Code violations.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

1. **DENY** Defendant Equifax's Motion to Dismiss in its entirety;

2. **DENY** Defendant's Opposition to Plaintiff's Motion to Deny Defendant's Motion to Dismiss;

3. **GRANT** Plaintiff's Motion to Deny Defendant's Motion to Dismiss;

4. **PERMIT** Plaintiff to proceed with discovery as outlined in Section V above;

5. **GRANT** such further relief as is just, proper, and equitable.

Date:  December 11, 2025

Respectfully Submitted,

Gilbert Bryan
5506 Dodge Drive
Fayetteville, NC 28303
910-257-7828
gbryan115@gmail.com

14

## CERTIFICATE OF SERVICE

I, Gilbert Bryan, hereby certify that on December 11, 2025, I caused to be served a true and correct copy of the foregoing **PLAINTIFF'S REPLY IN OPPOSITION TO DEFENDANT EQUIFAX'S OPPOSITION TO PLAINTIFF'S MOTION TO DENY DEFENDANT'S MOTION TO DISMISS** upon all parties of record via email. Additionally, a copy has been served via U.S. Mail to:

DATED: October 6, 2025

*By: /s/ Vincent Smolczynski*
Vincent Smolczynski
vsmolczynski@seyfarth.com
SEYFARTH SHAW LLP
300 S. Tryon Street
Suite 400
Charlotte, North Carolina 28202
Telephone: (704) 925-6060
Facsimile: (312) 460-7000
Counsel for Defendant

*/s/ GILBERT BRYAN*

Gilbert Bryan
Plaintiff, Pro Se
5506 Dodge Drive
Fayetteville, NC 28314
gbryan115@gmail.com
(910) 257-7828

16